## Pa. Dept. of Revenue v. Verna

*Prince Altee Thomas,* for the Commonwealth.
*Gary Lee,* for defendant.

BECKERT, *J.,* June 3, 1983.—The Common-. wealth, acting through its Department of Revenue, has attached twenty percent of Albert Verna, Sr.'s salary. The Department transmitted to our Prothonotary a certified copy of a sales tax lien against Verna in the amount of $421,246.34 with interest due from June 15, 1981. That action was followed by the Commonwealth filing a writ of execution directing the above attachment.

As provided for in Pa.R.C.P. 3123.1, Verna filed a Claim for Exemption from the attachment and demanded a hearing. Such a hearing was promptly scheduled and as various legal arguments were there raised the matter was placed on the May 16, 1983 argument list. Argument took place before the above constituted court en banc on the appointed day, and therefore the matter is now ripe for resolution.

The exemption statute, Act of July 9, 1976, P.L. 586, §2, as amended, by the Act of April 28, 1978, P.L. 202, §10(95), found at 42 Pa. C.S.A. §8127, effective June 27, 1978, provides:

(a) General rule.—The wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from *any attachment,* ex-

ecution or other process except upon an action or proceeding.

. . . .

(1) For support.

(2) For board for four weeks or less.

(3) Under the act of August 7, 1963 (P.L. 549, No. 290), referred to as the Pennsylvania Higher Education Assistance Agency Act.

[See Purdons Pennsylvania Legislative Service No. 5 (1982), page 1906; Act 1982—326.] (Emphasis supplied.)

The above statute was fathered by the Act of April 15, 1845, P.L. 459, 42 P.S. §886, which in pertinent part reads:

If the garnishee in his answers admit that there is in his possession or control property of the defendant liable under said act to attachment, then said magistrate may enter judgment specially, to be levied out of the effects in the hands of the garnishee, or so much of the same as may be necessary to pay the *debt* and costs: Provided, however, That the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer. (Emphasis supplied.)

As these are statutes of exemption, certain truisms come into play. First, statutes exempting property from execution are enacted on the grounds of public policy for the benevolent purpose of saving individuals and their families from want by reason of misfortune or improvidence. Therefore, the general rule is to construe such statutes liberally so as to carry out the humane purpose designed by our lawmakers. Second, a statute of exemption is in derogation of the common law principle that a man's property should be taken in payment and satisfaction of his debt and the exemption statute

should not be expanded or enlarged to include persons not therein specifically mentioned. This principle of strict construction has been modified by more recent rules regarding construction of statutes, in 1 Pa. C.S.A. §1928(a), which states:

The rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statute of this Commonwealth enacted finally after September 1, 1937.

Subsection (c) thereof further provides that all provisions of a statute, "shall be liberally construed to effect their objects and promote justice". See also Blake v. Pennsylvania Department of Public Welfare, 63 Pa. Commw. 491, 439 A.2d 1262 (1981).

Therefore it appears that a twofold question is before us — namely, does the statute prohibit the collection of taxes by the attachment of one's wages, and assuming that it does, does the act by its language apply to the Commonwealth within the framework of the case now at hand? To support its position the Commonwealth first directs our attention to Dole v. Philadelphia, 337 Pa. 375 11 A.2d 163, (1940) and Com. v. Shafer, 37 D.&C.2d 45 (1965). (Shafer merely relied on Dole for its holding.) Both of these cases were decided under the act of April 15, 1845 and in that exemption statute the language applied to debts. As taxes are not debts, we do not believe the holding of Dole and Shafer to be of any help or comfort to the Commonwealth, for in the instant case the applicable statutory provision is not limited to debts but applies to "any actions," except those which are specifically enumerated.

While the Commonwealth does not agree with the above conclusion, it further responds by directing us to the case of United States of America v. Miller, 229 F.2d 839 (Third Circuit 1956). Parenthetically, we would note that Miller was recently

applied to this question by Circuit Judge Edward R. Becker in the United States of America v. Kurtz, 547 F.Supp.17 (E.D. Pa. 1982), wherein by order only he held that 42 Pa. C.S.A. §8127 was not applicable to the United States because it was not applicable to the Commonwealth of Pennsylvania.

The linchpin of Miller is found at page 841 where it is stated: legislative enactments presumptively affect only private rights and do not embrace the rights of a sovereign unless the sovereign is explicitly designated or clearly intended . . . .

The Miller court went on to note that this doctrine has been applied by the courts of this Commonwealth in a variety of statutory enactments. See e.g., Pittsburgh Petition, 376 Pa. 447 (1954) (divestiture of liens); Hoffman v. Pittsburgh, 365 Pa. 386, 75 A.2d 649, (1950) (acquisition of land by a municipally); Blum's Estate. No. 3, 38 D.&C. 598 (1940) (liability to reimburse state for public assistance payments).

Verna's counsel contends however that the authority and soundness of the Miller case has been undermined by Blake v. Pennsylvania Department of Public Welfare, supra. In Blake, decided in 1981, the court upheld the exemption for workmen's compensation benefits against the Pennsylvania Department of Public Welfare. In so holding it stated:

. . . we do not believe the Commonwealth must be specifically mentioned in the statute for the exemption to apply against it. 439 A.2d at 1264.

Blake was obviously relying upon 1 Pa. C.S.A. §1928(a) but perhaps not upon subsection (c) thereof. If Blake was the highest appellate authority speaking on the subject we could stop here, but it must be remembered that Verna is attempting to strip the sovereign of its right to collect its tax, the tax purportedly already collected by Verna and in ef-

fect held in trust by him as a licensed vendor of this Commonwealth. (See, Tax Reform Code 1971, 72 P.S. §7101 et seq.) Therefore, we believe that it must be firmly demonstrated that the legislature intended to divest the sovereign of this avenue of collection. For the legislature to so divest and bestow any exemption from the attachment of wages for unpaid but collected taxes would grant to an individual freedom from the burden of a legislated, mandated payment which contributes to underwrite the expense and maintenance of our government.

There also comes into play another presumption, now grounded on a rule of statutory construction, 1 Pa. C.S.A. §1922(5) which states that in ascertaining legislative intent one must assume that the General Assembly intends to favor the public interest as against any private interest. Our Supreme Court in speaking of the status of state taxes said in Com. v. Central Realty Company, 338 Pa. 172, 12 A.2d 313 (1940), at page 316, the following:

State taxes stand on a different basis from local levies; the former are essential to the very "preservation" of the State itself (citation ommitted) while the latter are authorized or permitted by the State, not for its actual preservation, but merely to maintain the machinery of local government. So far as general principles enter into the matter, *the basic interest of the sovereign authority requires the direct revenues of the Commonwealth to be so guarded that no lien for state taxes shall be disturbed except by payment, unless some constitutional or statutory rule dictates otherwise.* (Emphasis supplied.)

We are convinced, regardless of Blake that Miller still lives, and find solace in that statement from the language found in Commonwealth Department of

Transportation v. J. W. Bishop & Company, Inc., 497 Pa. 58, 439 A.2d 101 (1981). In Bishop, the Pennsylvania Supreme Court sustained the tenet that "time does not run against the King" holding therein that a statute of limitation does not apply to the state unless the statute specifically so provides.

The rationale of "time not running against the King" is to preserve public rights and to protect public property. As stated in the well-reasoned, still unpublished March 3, 1983 opinion of Judge Rambo entitled United States of America v. Donald G. Chiolo and Harrisburg Decorating Co., the sovereign in its capacity of parens patriae or universal trustee was entitled to have its obligation satisfied before any other party, and that right could not be taken away by an exemption unless the legislature specially divested the Commonwealth of that privilege.

Verna urges upon us that construing the statute to exclude the Commonwealth flies in the face of the judicial abrogation of sovereign immunity as spelled out in Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A.2d 709 (1978). We find that this same argument was raised in Bishop and rejected. The Pennsylvania Supreme Court distinguished sovereign immunity as an unwarranted protection of the Commonwealth when it is in the position of a defendant and reputed wrongdoer, whereas the principle that "time does not run against the King" operates when the Commonwealth is plaintiff acting on behalf of the public interest. In the instant case the Commonwealth wears the "white hat" and not the garb of the tortfeasor.

We conclude that the refusal to apply the exemption statute to the collection of taxes by the Commonwealth serves to vindicate public rights and to protect public property, and therefore that it was not

the intent of the lawmakers to protect a defaulting trustee and provide to him an exemption shelter within which to protect his wages from an attachment.

In accordance with the above, we conclude that the Commonwealth's rights and privileges cannot be divested inferentially by statute but only by express words of the legislature. Thus we enter the following.

## ORDER

And now, this June 3, 1983, the claim of Albert Verna, Sr., for exemption from attachment of wages is hereby denied and dismissed.